IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EDMOND SMITH, et al.,           )
                                )
        Plaintiffs,             )
                                )       CIVIL ACTION NO.
v.                              )
                                )       CV-95-AR-1939-S
STEVENS GRAPHICS, INC.,         )
                                )
        Defendant.              )

FILED
97 MAR 28 PM 3: 34
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAR 28 1997

## MEMORANDUM OPINION

The court has before it a motion by defendant, Stevens
Graphics, Inc. ("Stevens") for summary judgment in the above-styled
matter. For the reasons hereinafter set forth, the motion will be
granted.

### A. Pertinent Facts

Plaintiffs, Edmond Smith ("Smith"), James Chamblish
("Chamblish") and Arthur Tyner ("Tyner"), all black males, work for
Stevens as employees in the "press department" of Stevens' printing
plant. Promotions along the pressing unit's hierarchy--(a) second
assistant (entry level); (b) first assistant; (c) press apprentice;
and (d) journeyman--are controlled by the collective bargaining
agreement entered into by Stevens and plaintiffs' union, Birmingham
Graphics Communication Union Local 121 ("Local 121"). First

1

30

assistants are promoted to press apprentices--a necessary step on the ladder to the journeyman position[1]--by an entity known as the Joint Apprentice Committee ("JAC").  The JAC is a body composed of an equal number of management and labor representatives.  Prior to an April 1, 1989, collective bargaining agreement, the JAC was given complete autonomy to determine press apprentice promotion criteria, so long as the most senior qualified first assistant was chosen for any vacant apprentice positions.  After that date, the JAC's authority was limited, but the JAC apparently still maintained the right to select and implement certain testing procedures.

One of the qualifications required for promotion to press apprentice was a passing score of 37 questions correct out of a possible 68 questions on the Bennett Mechanical Comprehension Test ("BMCT").  The BMCT was suggested by Scott Rapp ("Rapp"), Stevens' Human Resource Manager and "ex-officio chairperson of the JAC," as a way to increase the quality of apprentices and journeyman.  The BMCT received a January 6, 1987, endorsement from psychologist John A. Allen, Ph.D.  Dr. Allen wrote at that time that he believed the

---

[1]Stevens occasionally hired "outside" journeymen to fill vacant journeyman positions. All of these persons had already achieved the union status of "journeyman" and therefore were not required to be hired through the promotion hierarchy or take the BMCT, discussed *infra*.

2

BMCT to be well suited for screening the mechanical aptitude of
persons for press apprenticeships. He further suggested a "liberal"
cut-off score of 55%, a 37 on the test, as a passing mark.

A passing score on the BMCT was used as one criterion for
promotion.    Other criteria included seniority, a high school
diploma    (this    requirement    was    later    dropped),    satisfactory
attendance,    and a satisfactory work record.    In 1986, these
criteria were used in the decision to promote three men from first
assistant to apprentice.  Apparently, though their applications do
not show this, one was a black male and two were white males.  In
that year both first and second assistants were allowed to take the
BMCT.   Chamblish took the test that year and failed to achieve a
score of 37 or better.  Accordingly, he was denied promotion.

As mentioned above, on April 1, 1989, the discretion of the
JAC, with regard to determining qualifications for apprentices, was
restricted.  The bargaining agreement determined that the JAC would
be made up of three union and three management positions and that
they    would    "determine    programs,    progression    and    disciplinary
action" of the apprentice program in a non-discriminatory manner.
Furthermore, it    was    recognized    that    no    employee    could    be    an
apprentice    unless    that    person    was    a    member    of    the    union.     All
vacant    apprentice    positions    were    to    be    posted    for    seventy-two

3

hours. Persons who met certain qualifications and who had seniority would be determined successful bidders for the apprenticeship positions. The qualifications were the same as those informally required by the pre-1989 JAC. They included "attendance, past work record, productivity, quality of work, and results of valid tests." The "valid tests" criterion has been interpreted to mean a passing score of 37 on the BMCT.

In May 1994, all these plaintiffs failed to achieve passing scores on the BMCT and all were denied apprentice positions, even though they were the three most senior bidders for the position. Plaintiffs filed EEOC charges in July and October 1994. From May 1994, until March 1996, there were five apprentice positions available. Two of these positions were filled by plaintiffs Chamblish and Taylor. The promotions were awarded after plaintiffs filed their EEOC complaints and after they achieved passing marks on the BMCT. Smith has yet to pass the BMCT. No evidence was provided relating to the hiring trends for the entire relevant period, 1986 until 1996--the dates the BMCT was in effect.

Defendant provided statistical evidence from a purported expert showing that there was no statistically significant deviation in Stevens' hiring or promotion activities that would indicate discrimination. Plaintiffs, without providing an expert

4

of their own and without filing an appropriate motion, "moved" in their brief to strike defendant's expert's testimony. Inasmuch as plaintiffs have abandoned their adverse impact theory, and since this court need not decide the underlying discrimination issue, plaintiffs' implied motion and the expert testimony are irrelevant.[2]

### B. Summary Judgment Standard

Rule 56 states, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c). As stated by the Eleventh Circuit, "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir.

---

[2]Plaintiffs' counsel has moved for several extensions over the course of this litigation. In regard to the present motion for summary judgment plaintiffs' counsel was granted a two week extension, half the time requested by counsel but nevertheless generous given the age of the present action, to file his response brief.  Shortly before the extended deadline, plaintiffs' counsel informed the court he would be unable to file his response brief on time. The court denied further extension, but nevertheless did not strike plaintiffs' evidence or brief, submitted two days after the extended deadline, and considered them for purposes of defendants' motion for summary judgment. The brief and evidence were not particularly helpful.  Reviewing a few of plaintiffs' counsel's motions to extend, both in the present case and in other files, of which there are many in this district, the court finds that plaintiffs' counsel often, if not always, requests extensions on the ground that he is overburdened by his caseload.  Plaintiffs' counsel must find a way to comply with scheduling deadlines.

1994).

## C. Legal Analysis

Defendant emphasizes that the JAC was completely responsible for the selection criteria, including the use of the BMCT. Defendant notes that the JAC, from 1986 until 1989, had complete discretion over selection criteria of apprentices and that post-1989 the collective bargaining agreement mandated the terms of selection criteria. Citing *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 102 S. Ct. 3141 (1982), defendant argues that it cannot be liable for the employment decisions of the JAC. As in this case, the associations in *General Building* were bound by the collective bargaining agreement to hire and promote only those persons recommended to it by Joint Apprenticeship and Training Committee ("JATC"), half of whom were trade representatives and half of whom were union members. *Id.* at 379, 102 S. Ct. at 3144. The Court held that although the associations contributed half of the JATC's members and that the JATC was wholly funded by mandatory employer contributions, the JATC was not "the employers' servant or agent any more than an independent contractor is rendered an agent simply because he is compensated by the principal for his services." *Id. at* 394-95, 102 S. Ct. at 3152.

6

The Court held that "[t]he employers must also enjoy a right to control the activities of the JATC." *Id.* at 395, 102 S. Ct. at 3152. Because no evidence of an agency relationship was shown in that case, the various associations which contributed money and members to the JATC could not be held liable for the JATC's actions. Justice O'Connor, joined by Justice Blackmun, concurred in the opinion but noted that on remand the district court could and should determine whether the employer had any control over the JATC. *Id.* at 403-04, 102 S. Ct. 3165-57. In the instant action, however, plaintiffs have produced absolutely no evidence to contradict defendant's evidence and that could establish any agency relationship. Accordingly, defendant's motion for summary judgment is due to be granted.

In the event that this court should disagree with it on the agency question, Stevens has argued, in the alternative, that plaintiffs have failed to join necessary and indispensable parties (the JAC and Local 121) pursuant to Rule 19 F.R.Civ.P. Stevens argues that any relief granted to plaintiffs, if it were forthcoming, would implicate the collective bargaining agreement and the operations of the JAC.

> Rule 19 requires two separate inquiries. First, are there
> persons who should be joined either because their own

7

interests or the interests of the parties might be harmed
by their absence?    Such persons, referred to as
"necessary parties," must be joined if feasible.
Fed.R.Civ.P. 19(a).  Second if parties determined to be
necessary under rule 19(a) cannot be joined should the
action in "equity and good conscience" be dismissed?
Only if the court determines that the action should be
dismissed is the absent party labeled "indispensable."
Fed.R.Civ.P. 19(b); *see English v. Seaboard Coast Line
Railroad*, 465 F.2d 43, 48 (5th Cir. 1972).

*Eldredge v. Carpenters 46 Northern California Counties Joint
Apprenticeship and Training Committee*, 662 F.2d 534, 537 (9th Cir.
1981), *cert. denied*, 459 U.S. 917, 103 231 (1982); *Accord* 3A James
Wm. Moore, et al., Moore's Federal Practice ¶ 19.07-1[0](2d ed.
1996).  Necessary parties include those persons "in whose absence
'complete relief cannot be accorded among those already parties,'"
*id.* (citing Rule 19(a)(1) Fed.R.Civ.P.), and those who

claim an interest relating to the subject of the action
and [are] so situated that the disposition of the action
in the person's absence may (i) as a practical matter
impair or impede the person's ability to protect that
interest or (ii) leave any of the persons already parties
subject to a substantial risk of incurring double,
multiple, or other wise inconsistent obligations by
reasons of the claimed interest.

Rule 19(a)(2) Fed.R.Civ.P.  Defendant has convinced the court that
Local 121 and the JAC are necessary parties.  Because any
adjudication or resolution of this matter will undoubtedly affect
the collective bargaining agreement, in which the union has a very

8

substantial interest, and the functioning of the JAC, the union and JAC should have been joined. *See Equal Employment Opportunity Commission v. United States Pipe & Foundry Co.*, 375 F. Supp 237, 245 (N.D. Ala. 1974); *Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78, 86 (S.D.N.Y. 1973).

> In the event that this court were to determine that the
> bargaining agreement between [Local 121] and [Stevens]
> required judicial amendment to effect compliance with
> Title VII, it would be reluctant to do so without hearing
> from the union which represents pursuant to statutory
> obligation, the employees affected.

*United States Pipe & Foundry*, 375 F. Supp. at 243.

Given a determination that Local 121 and the JAC are "necessary" parties, this court must next determine whether their joinder was "feasible." Usually, joinder is not feasible where the necessary party would not be subject to service of process, where the joinder would deprive the court of subject-matter jurisdiction, or where venue would be improper. *See* James Wm. Moore, et al., 3A Moore's Federal Practice ¶ 19.07-1[0] (2d ed. 1996). In this case such facts concerning "feasibility" are not available. Defendant argues that plaintiffs have been on notice of defendant's position that Local 121 and the JAC are necessary and indispensable parties since early on in this litigation. Defendant proffered this objection in its answer, in its answer to the amended complaint,

9

and in its answer to the second amended complaint.  Furthermore, this court, in a November 5, 1995, order, put plaintiffs on notice that defendant's argument would be addressed by the court if such a motion was later filed by defendant. Even with all this forewarning, plaintiffs, for tactical or other reasons, decided not to add Local 121 and the JAC as parties to this action.  The time for adding additional parties pursuant to Rules 16 and 26 has come and gone without plaintiffs joining necessary defendants.  To add Local 121 and the JAC at this very late stage of litigation would unduly prejudice Stevens and would indefinitely drag forward this very old case.   Accordingly, the addition of such would-be defendants is not feasible pursuant to Rule 19(a). *Cf. Culbreath v. Dukakis,* 630 F.2d 15, 25 n.14 (1st Cir. 1980)("Rule 19 is not a route around the timeliness requirement of intervention under Rule 24.").

Because joinder of necessary parties is not now feasible, the court must next determine whether Local 121 and the JAC are indispensable parties pursuant to Rule 19(b).   Under certain circumstances "members of a joint labor-management apprenticeship training [are] not indispensable in an [employment discrimination] action challenging the training program's selection process." 3A

10

James Wm. Moore, Moore's Federal Practice ¶ 19.13[2] (2d ed. 1996)(citing *Eldredge v. Carpenters, Etc.*, 662 F.2d 534 (9th Cir. 1981), *cert. denied,* 459 U.S. 915, 103 S. Ct. 231 (1982)). Indeed, even when claims against the union and the employer are closely related, such claims need not be tried together unless such claims are inseparable. *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 72, 101 S. Ct. 1559, 1569 n.2 (1981)(Stevens, J., concurring in part and dissenting in part)(citing *Vaca v. Sipes,* 386 U.S. 171, 186-187, 87 S. Ct. 903, 914-15 (1967)).

However, in the present action plaintiffs request: (a) that this court grant relief in the form of a declaratory judgment that defendant's hiring procedures, which were negotiated with Local 121 and which were implemented by the JAC, violated plaintiffs' Title VII and § 1981 rights; (b) that defendant be enjoined from acting in a like manner in the future, thus in violation of the collective bargaining agreement; and (c) that defendant be forced to give other relief, including promotions and back pay, in violation of union promotion policies and the collective bargaining agreement. (Plaintiffs' Second Amended Complaint (styled "Amended Complaint")). Such relief would indisputably tread on the union's hiring and promotion procedures, and would infringe upon the

11

collective bargaining agreement to which the union is a party. Such relief would also place demands upon the JAC, in the form of injunctive relief, as to which it did not have the opportunity to defend.

In *General Building Contractors Association, supra,* the Supreme Court found that an employer cannot be held liable for the hiring and promotion schemes mandated by collective bargaining agreements and implemented by an organization much akin to the JAC, unless it controlled the JAC. While that case did not deal with Rule 19, it illustrates that, in situations such as this one, while the employer may or may not be liable for the actions of the JAC and the union, those parties who possibly are liable should be parties to the action. This court is unsure what relief it could provide without directly affecting the rights and obligations of the Local 121 and the JAC.

In cases where provisions of the collective bargaining agreement will be directly affected, and therefore, so will the relative positions of the union, the employer, and the JAC, all of the relevant parties have been considered to be "indispensable" pursuant to Rule 19(b). *See Equal Employment Opportunity Commission v. McLean Trucking Co.,* 525 F.2d 1007, 1009, 1012 (6th Cir.

12

1975)(where collective bargaining agreement was alleged to have
"required or perpetuated the maintenance of racially segregated job
classifications," unions, not named in the EEOC charge, were
indispensable parties who should have been joined to the
litigation); *United States Pipe & Foundry, Co.*, 375 F. Supp. at 245
(where injunction would modify collective bargaining agreement so
that it complied with Title VII, union was an indispensable party);
*Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78, 87-88 (S.D.N.Y.
1973)(unions who participated in writing the collective bargaining
agreement have interest in ligation which seeks to rewrite portions
of that agreement, and complete relief cannot be afforded without
their participation).

In instances where unions or employers were found
"dispensable," claims asserted against a defendant union or
employer were found to be independent actions that would not
directly affect the terms of the bargaining agreement.
Furthermore, in those instances, full relief could be provided to
plaintiffs even where an interested union or employer was not
joined. *See Hester v. Int'l Union of Operating Eng'rs*, 941 F.2d
1574, 1579 (11th Cir. 1991)(breach of contract claim between
employees and their union, where no breach was alleged by employer,

employer not a necessary party where complete relief could be otherwise provided); *Diaz v. Schwerman Trucking Co.*, 709 F.2d 1371, 1375 (11th Cir. 1983)(in an action for back pay against employer, union could not be indispensable party, because relief sought could be awarded without impairing union interests).

In this case: (1) any relief afforded would prejudice Stevens in its relationship with the union and its hiring practice; (2) this prejudice could hardly be lessened or avoided without a restructuring of the collective bargaining agreement--namely in the use of the BMCT--and a restructuring of the way promotions are evaluated; and (3) without Local 121 and the JAC's participation any relief afforded would be wholly inadequate--if these entities continued to use the BMCT, and defendant was still required to hire these persons pursuant to the agreement, the problem has in no sense been alleviated. *See* Rule 19(b) F.R.Civ.P.  Until 1989, the JAC had complete autonomy over selection criteria for the apprenticeship positions, after that date the JAC still had significant authority but the collective bargaining agreement, negotiated by Local 121 and Stevens, provided for certain requisite promotion qualifications. One of these qualifications included the employees' ability to pass standard and appropriate tests, in this

14

case the BMCT.    It is impossible for this court to construct a form of relief that would be at all adequate given the fact that the JAC and the provisions of the collective bargaining agreement require a certain test that is the focus of the present action. While it is unclear whether plaintiffs could have an adequate remedy if this case is dismissed for nonjoinder, *see id,* it is clear that no relief can be afforded without the involvement of either Local 121 and the JAC. It is also clear that plaintiffs could have, but chose not to, join those indispensable parties long ago.    Accordingly, defendant's motion for summary judgment is due to be granted for a second, equally supported reason.

Plaintiffs make almost no attempt to discuss defendant's Rule 19 arguments.    They merely claim that even if the union is also liable, that this joint liability in no way eviscerates the possibility that defendant "is as much, if not more, responsible for the continued implementation of the BMCT, and the hiring of outside individuals into journeymen positions."    While this may or may not be true, and while plaintiffs' argument would be compelling in a normal joint tortfeasor case, where plaintiffs could sue some, all or no joint tortfeasors, this is not the normal case.    In a normal joint tortfeasor case, the unnamed tortfeasor's  rights are unaffected by an adverse adjudication against the named tortfeasor.

Whereas, in the present case, any relief granted would inexorably and undeniably affect the rights of the unnamed union and JAC.

The solution to the present dilemma, if plaintiffs claims were found to be valid, require a restructuring of the collective bargaining agreement.  Plaintiffs appear to claim that this is not necessarily true, since defendant did not always hire from the apprentice ranks, but rather hired already established journeymen to journeymen positions within Stevens.  This is irrelevant.  Even if, *arguendo*, the BMCT was an invidious device by which defendant, the union and the JAC undertook to discriminate against blacks and keep them from the apprentice and journeyman positions, the only resolution of this unfair treatment, assuming this court should preclude Stevens from hiring outside the union promotion ladder (which it doubts it can do), is to eliminate the use of the BMCT. This would require an adjudication of the rights and obligations of both the JAC and Local 121. Plaintiffs do not even attempt to argue to the contrary or present any evidence or devise any scheme that would allow this court to proceed without those indispensable parties.

Even if Local 121 and the JAC are not indispensable parties, plaintiffs action, insofar as it attempts to state a claim for disparate impact, is due to be dismissed with prejudice for want of

16

prosecution of that claim.  Plaintiffs, though they took pains to amend their original complaint to include an adverse impact claim, and though they have included some basic statistical information as factual background, have abandoned their adverse impact case.  They did not respond, perhaps wisely, to those arguments on this subject that were convincingly and thoroughly addressed by defendant. Because the court will dismiss the action on Rule 56 and Rule 19 grounds, it need not decide whether plaintiffs' disparate treatment claim can proceed--though this court sincerely doubts, having read the parties briefs and having examined the evidence and law, that this claim could even succeed.

A separate and appropriate order will be entered.

DONE this **28** day of March, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT

17